Burton DENBY, Plaintiff,

v.

The BOARD OF REVIEW OF the
INDUSTRIAL COMMISSION of
Utah, Defendant.

No. 14841.

Supreme Court of Utah.

July 11, 1977.

Lucy Billings, of Salt Lake County Bar Legal Services, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., Floyd E. Astin, Asst. Atty. Gen., Winston Faux, Spec. Asst. Atty. Gen., Allan Zabel, Spec. Asst. Atty. Gen., Salt Lake City, for defendant.

MAUGHAN, Justice.

Plaintiff, a claimant for unemployment compensation benefits, appeals from a decision of the Board of Review affirming the decision of an Appeals Referee. The board found the decision of the referee fair, unbiased, and supported by competent evidence. The benefits were denied on the grounds claimant had voluntarily left his employment without good cause (Sec. 35–4–5(a)), and he did not meet "availability" requirements of Sec. 35–4–4(c), for eligibility.

We affirm. All statutory references are to U.C.A.1953.

Claimant, age 64, was last employed as a clerk for the United States Postal Services on February 15, 1976. He voluntarily retired and moved to Fallon, Montana to reside on a ranch with his brother and son. Claimant assists his family in operating the ranch. On his claim for benefits, claimant stated he was available for "light clerical work" and wouldn't accept less than $6.70 per hour. Subsequently, he modified his demand and expressed a willingness to accept the prevailing wage. Claimant receives $131.00 per month in Social Security retirement benefits and $153.00 per month from the civil service.

From February 22, to June 2, 1976, claimant applied for employment at four places. He applied at two family owned and operated bars in Fallon and Terry, Montana. Claimant had had no prior work experience as a bartender. He contacted Standard Chemical for a position as a salesman in Fallon; he conceded this was seasonal work, contacting farmers, and nothing was available. Claimant contacted Schwartz Construction Company in Glendive, Montana for clerical work, such as time keeping. Fallon has a population of 300; Terry, Mon-

tana is approximately ten miles from Fallon and has a population of 1400. Glendive, Montana is approximately 28 miles from Fallon, and Miles City is approximately 50 miles, each has a population of approximately 10,000. Claimant had filed an application for employment with Job Services in Miles City. He expressed a preference to work in the Fallon-Glendive area, although he claimed he would be willing to travel to Miles City for employment.

The hearing examiner observed there were quite a few businesses in Terry, the county seat. Claimant did not respond directly but asserted that the banks in Terry had all the money, and others were starving. He further expressed a desire to earn no more than permitted by Social Security. He was equivocal as to whether his automobile was in the condition to transport him as far as Glendive.

Based on the foregoing, the referee found claimant was not available for work, a requirement for eligibility for benefits under Sec. 35-4-4(c). The referee found there were several firms in Terry where claimant reasonably could have applied for work, but had not done so; and that claimant had primarily restricted his availability to Fallon. The referee stated voluntary retirement gives rise to a rebuttable presumption a claimant has withdrawn from the general labor force. He found claimant's efforts to become employed were passive rather than active and reasonable as required by the act for eligibility, and that claimant's efforts were not sufficient to rebut the presumption of withdrawal from the labor force.

On appeal, plaintiff contends there was no substantial, competent evidence to support the finding of unavailability for work, and the facts do not indicate passive efforts to receive employment.

In *Martinez v. Board of Review, Dept. of Emp. Sec.*[1] this court observed that under Sec. 35-4-10(i), a reversal of an order denying compensation can only be justified if there be no substantial evidence to sustain the determination. We also said, the facts of record must clearly and persuasively prove a right to compensation, thus rendering the refusal to make an award capricious, arbitrary, and unreasonable. We stated our duty was to examine the record and to affirm; unless, as a matter of law, the determination of the question of availability for work was wrong because only the opposite conclusion could be drawn from the facts.

■ Eligibility for compensation is not established by showing a passive willingness to gain employment. A claimant must act in good faith, and make an active and reasonable effort to secure employment.[2] To be available for work, an applicant must be genuinely attached to the labor market.

The test suggested is subjective in nature. Whether or not a claimant is in fact available for work depends to a great extent upon his mental attitude, i. e., whether he wants to go to work or is content to remain idle. Indicative of such mental attitude is evidence as to efforts which the person has made in his own behalf to obtain work. A person who is genuinely attached to the labor market and desires employment will make a reasonable attempt to find work, and will not wait for a job to seek him out. . . .[3]

In the *Holberg* matter[4] it was held the making of three or four applications for employment, over a four or five month period, by claimants, who had voluntarily retired; did not constitute such a diligent search for work as to justify disturbing the findings of the Commission.

■ The rebuttable presumption cited by the referee is explained in *Fleiszig v. Board of Review.*[5] There the court observed the application for and receipt of

1. 25 Utah 2d 131, 132–133, 477 P.2d 587 (1970).

2. *Gocke v. Wiesley,* 18 Utah 2d 245, 420 P.2d 44 (1966).

3. *Texas Employment Commission v. Holberg,* Tex., 440 S.W. 2d 38, 40–41 (1969).

4. Note 3, Supra.

5. 412 Ill. 49, 104 N. E. 2d 818 (1952).

retirement benefits and social security was clearly evidence of an intention to retire from gainful labor. Also that such disclosed a mental attitude inconsistent with a genuine attachment to the labor market. Thus, where the conduct shown is consistent with an intention or desire to retire, the claimant cannot be deemed attached to the labor force.

■ The record further indicates claimant desired to restrict his employment to assure he would not exceed the maximum income limitations, under the social security act. A claimant must expose himself unequivocally to the labor market. One who makes himself available only upon a restricted basis, thus limiting his availability for work, because of personal reasons; is not entitled to compensation.[6]

One other aspect merits consideration. Claimant testified he moved to Fallon, because he wished to live out his retirement where he was "born and raised." The referee found light clerical work, which claimant desired, was virtually non-existent in the area where claimant would travel. Also, claimant's wage demand was unreasonable. The referee did note claimant's subsequent removal of the wage demand and willingness to accept work as a bartender or salesperson.

In *Claim of Sapp,*[7] claimant chose to detach himself from whatever opportunities there may have been in the Boise area, where he had previously been employed; and moved to a small town where labor opportunities were practically non-existent. The court observed that to fulfill the availability requirements of the statute, a claimant must be seeking work at a point where an available labor market exists. It further said the evidence disclosed a mental attitude desiring removal to a locality away from the labor market. And, although

claimant would have accepted any suitable employment, there was little or no expectation of getting any. To be deemed "available" a person must be genuinely attached to the labor market. The court carefully limited its holding so it would not have the effect of making it necessary, for a claimant to remain at or near his residence, to satisfy the availability requirements. The court stated:

> . . . we simply hold that under the particular facts adduced in this specific case by claimant he detached himself from the labor market and has shown as a matter of fact that he was not available for suitable work under the statute.[8]

■ A review of the facts adduced here sustains the finding of the referee, claimant was not available for work. Claimant's conduct clearly indicated an intent to disattach himself from the labor market. His four contacts to obtain employment, over a period of 100 days, (particularly when two of the contacts were for work for which he had no experience and admittedly which he disliked to do (bartending)), were neither the type nor quantum of evidence which would compel reversal of the Board of Review. Only the opposite conclusion could be drawn from the facts.

Claimant further contends there was no substantial competent evidence to support the determination he was ineligible for benefits for a period of four weeks. The determination was made on the ground he left work voluntarily, without good cause, Sec. 35-4-5(a).

In testifying to his voluntary retirement, he stated:

> Well, I felt like this. Seventy years of age is the compulsory retirement age in the postal service. Very, very many don't reach seventy years of age—it's a

---

**6.** *Puter v. Administrator, Unemployment Compensation Act,* 22 Conn.Sup. 96, 162 A.2d 526 (1960); *Clark v. Board of Review of the Employment Security Division of the Labor Dept.,* 187 Kan. 695, 359 P.2d 856 (1961); *Medina v. Ind. Comm.,* Colo.App., 554 P.2d 1360 (1976).

**7.** 75 Idaho 65, 266 P.2d 1027, 1030 (1954).

**8.** Also, see *Employment Security Commission v. Kosic,* 106 Ariz. 379, 476 P.2d 834, 835 (1970): ". . . 'there is virtual unanimity that the worker is unavailable who leaves a locality of industrial activity and moves to an area where little or no opportunity exists for work within his qualifications.' . . ."

job of extreme tensions and pressures, people pass out, heart attacks, nervous breakdowns, I just didn't feel like staying any longer.

Claimant testified he suffered with arthritis, and sometimes had to take medication, which dulled his mind. He further cited mental stress, as another factor leading to his decision. Also, the effect of mandatory overtime, as a contributing cause to his voluntary termination.

The referee found there was no medical evidence to show a medical or physical condition prevented claimant from continuing employment. Further, according to the employer, there were exemptions to mandatory overtime. There was no evidence claimant requested or applied for such an exemption. The referee concluded, based on the evidence submitted, there were no compelling reasons, i. e., good cause, for claimant voluntarily leaving his work.

What is 'good cause' must reflect the underlying purpose of the act to relieve against the distress of involuntary unemployment. The seeming paradox of allowing benefits to an individual whose unemployment is of his own volition disappears when the context of the words is viewed in that light. The Legislature contemplated that when an individual voluntarily leaves a job under the pressure of circumstances which may reasonably be viewed as having compelled him to do so, the termination of his employment is involuntary for purposes of the act. In statutory contemplation he cannot then reasonably be judged as free to stay at the job. . . .[9]

The initial determination of "good cause," for voluntarily leaving employment, is a mixed question of law and fact for the administrative agency. A claimant has the burden of showing good cause for leaving, when he voluntarily terminates suitable employment. "Good cause" has been defined as "such cause as would similarly affect persons of reasonable and normal sensitivity, and is limited to those instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person, exercising ordinary common sense and prudence, would be justified in quitting under similar circumstances."[10]

Furthermore, in order to have good cause for leaving work, an employee with grievances about his employment must indicate an effort to work out the problems, unless he can demonstrate that such effort would be futile.[11]

In the matter before us, the evidence of the circumstances cited by claimant is insufficient to require this court to conclude as a matter of law that he was compelled to leave his employment. Particularly is this so, when he made no effort to be relieved of the offending conditions; where relief was available.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.

---

**9.** *Krauss v. A & M Karagheusian, Inc.,* 13 N.J. 447, 100 A.2d 277, 286 (1953).

**10.** *Stevenson v. Morgan,* 17 Or.App. 428, 522 P.2d 1204, 1206 (1974); *Wilton v. Employment Division,* 26 Or.App. 549, 553 P.2d 1071 (1976).

**11.** *Glennen v. Employment Division,* 25 Or. App. 593, 549 P.2d 1288 (1976).