**SALT LAKE CITY CORPORATION, Plaintiff,**

v.

**DEPARTMENT OF EMPLOYMENT SECURITY and Marian Lynch, Defendants.**

No. 17922.

Supreme Court of Utah.

Dec. 30, 1982.

Roger F. Cutler, Walter R. Miller, Salt Lake City, for plaintiff.

David L. Wilkinson, Atty. Gen., Floyd G. Astin, K. Allen Zabel, Sp. Asst. Attys. Gen., Salt Lake City, for defendants.

STEWART, Justice:

The issue on this appeal is whether a former employee of Salt Lake City is entitled to unemployment compensation after quitting her job with Salt Lake City.

Marian Lynch worked for Salt Lake City Corporation from 1977 to April 15, 1981, and had the title Real Estate Acquisition Officer. In 1981, pursuant to a change in the form of city government, the City reorganized the Department of Real Property Management and merged it with the Personal Property Control Department. In the

reorganization process, the City established job positions entitled Fixed Asset Agent I and Fixed Asset Agent II. Fixed Asset Agent II was essentially the same position as Real Estate Acquisition Officer which Lynch had held since she began working for the City, except that the job-qualification requirements were reduced and the compensation higher. Despite the reduced qualifications Lynch was told that the qualifications for her position as Real Estate Acquisition Officer did not qualify her for the Fixed Asset Agent II position. The City then offered Lynch the position of Fixed Asset Agent I, a job with lower pay, a different job description, and a lower job classification than her position as Acquisition Officer. She declined the position.

The City allowed Lynch to remain employed as Real Estate Acquisition Officer pending a review of her job duties and work load by a supervisor. However, during the review period, Lynch's real estate files were taken from her, and she lost a significant portion of her job duties. Because of the offer of the Fixed Asset Agent I position, the then pending review of her job duties, and her supervisor's statements about her qualifications, Lynch thought that she would be demoted to a lower level job and that she was being treated unfairly. She then investigated the employment opportunities in other departments with the City, but was unable to find another position for which she felt qualified. She terminated her employment with the City on April 15, 1981.

She applied for and was granted unemployment compensation benefits. The City appealed the award to an Industrial Commission appeals referee. The City's contention was that because Lynch had voluntarily resigned from her position, she was ipso facto ineligible for benefits. The referee found that "the claimant voluntarily left her employment because she did not feel she would be given the job for which she was qualified," and her resignation was found to be "without good cause." The Board of Review reversed, stating:

[T]he claimant may not have good cause for voluntarily leaving work because the employer had not made a final decision concerning her new job duties. However, the circumstances evidence a refusal on the part of the employer to give the claimant the new position as Fixed Asset Agent II for which she was not only qualified but fully experienced and trained. Therefore, it is considered under the foregoing circumstances, as such existed on April 15, 1981, that the claimant's decision to leave her work was reasonable. Inasmuch as the Appeal Referee found that the claimant has been seeking work since her termination, it is concluded that a denial of benefits in the instant case would be contrary to equity and good conscience.

■ The Employment Security Act is designed to provide a "cushion from the shocks and rigors of unemployment." *Singer Sewing Machine Co. v. Industrial Commission,* 104 Utah 175, 189, 134 P.2d 479, 485 (1943). Although the Act is not designed to provide benefits to those who will not work, it is to be liberally construed and administered to assist those who are attached to the work force and need a bridge between jobs. *See Northern Oil Co. v. Industrial Commission,* 104 Utah 353, 140 P.2d 329 (1943); *Johnson v. Board of Review of Industrial Commission,* 7 Utah 2d 113, 320 P.2d 315 (1958).

■ In reviewing the Commission's findings of fact, this Court is limited to determining whether those findings are supported by substantial evidence. U.C.A., 1953, § 35–4–10(i); *Haywood v. Industrial Commission,* Utah, 642 P.2d 719 (1982). Proper deference to statutory duties and responsibilities of the Industrial Commission does not permit us to reassess the weight of the evidence. *See Baker v. Department of Employment Security,* Utah, 564 P.2d 1126 (1977). For this Court to set aside findings of fact, they must be without substantial support in the record and hence clearly arbitrary and capricious. *Continen-*

tal Oil Co. v. Board of Review of Industrial Commission, Utah, 568 P.2d 727 (1977); Whitcome v. Department of Employment Security, Utah, 564 P.2d 1116 (1977).

■ In administrative law cases, our scope of review of an agency's decisions as to legal questions and questions of mixed law and fact is generally broader than our scope of review of questions of fact. On most questions of statutory construction, with some exceptions, our review is plenary with no deference accorded the administrative determination. That standard is particularly applicable with respect to constitutional law issues. However, where the language of a statute indicates a legislative intention to commit broad discretion to an agency to effectuate the purposes of the legislative scheme, we will not substitute our judgment for that of the agency as long as the commission's interpretation has "warrant in the record" and a "reasonable basis in the law." Unemployment Compensation Commission v. Aragon, 329 U.S. 143, 153–154, 67 S.Ct. 245, 250–251, 91 L.Ed. 136 (1946); National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 131, 64 S.Ct. 851, 860–861, 88 L.Ed. 1170 (1944). Furthermore, where agency decisions deal with technical questions which call for the exercise of expertise, born either of a technical background and training or long experience in dealing with numerous, similar problems, we also accord deference to an agency interpretation because of the necessity to recognize discretion commensurate with the nature of the issue, as defined by the general purposes of the Act, although the latitude accorded may vary with the nature of the issue. SEC v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1946), provides an example. The statutory language at issue in Chenery required that before the Commission could give approval to a plan of reorganization of a utility holding company, the Commission was required to determine among other things that the plan was "fair and equitable." 332 U.S. at 204, 67 S.Ct. at 1581. The standard of

review under such legal criteria was based on deference to the "informed discretion" of the Commission and permitted reversal of the Commission's ruling only upon a plain abuse of its discretion. Id. at 208, 67 S.Ct. at 1583.

■ In the instant case it is clear that the Legislature has conferred broad discretion on the Commission under the "equity and conscience standard." Although there may be little expertise involved in deciding unemployment compensation claims, we nevertheless recognize that the Commission should be accorded considerable latitude in making determinations under that standard. In working with many such claims, the Commission no doubt has developed a "feel" for such cases that escapes a court that deals with them only occasionally. Accordingly, we will not reverse unless the Commission has plainly abused its discretion.

The City contends that proper construction of the controlling statutory provision, U.C.A. § 35–4–5(a) (1981 Supp.), precludes an award of compensation because that provision prohibits compensation wherever an employee voluntarily quits irrespective of all other circumstances. A corollary of that argument is the City's contention that the Board of Review erred when it held that "equity and good conscience" provided a separate and additional standard for awarding compensation and that the award of compensation was justified under that standard.

Section 35–4–5(a) states:

Ineligibility for benefits. An individual shall be ineligible for benefits or for purposes of establishing a waiting period: Voluntarily Leaving Work.

(a) For the week in which the claimant left work voluntarily without good cause, if so found by the commission, and for each week thereafter until the claimant has performed services in bona fide covered employment and earned wages for such services equal to at least six times

the claimant's weekly benefit amount; *provided, that no claimant shall be ineligible for benefits if the claimant leaves work under circumstances of such a nature that it would be contrary to equity and good conscience to impose a disqualification.*

The Commission shall in cooperation with the employer consider for the purposes of this act, the reasonableness of the claimant's actions, and the extent to which the actions evidence a genuine continuing attachment to the labor market in reaching a determination of whether the ineligibility of a claimant is contrary to equity and good conscience. [Emphasis added.]

■ The City contends that the "equity and good conscience" standard adds nothing to, and merely restates in a different language, the "good cause" requirement. The statute does not support that contention. The two provisions were patently intended to establish different standards. They were enacted at different times and for different purposes.[1] On the plain meaning of the statute, it is clear that if no "good cause" is shown, the "equity and good conscience" standard is to be applied. Thus, even when an employee quits "voluntarily and without good cause," benefits may be awarded if the Commission finds that "it would be contrary to equity and good conscience to impose a disqualification."

1. A review of what legislative history there is supports the conclusion that the Legislature intended to establish two different standards.

2. The Board based its conclusion in part on the following:

   In reversing the decision of the Appeal Referee, the Board of Review notes that the claimant worked for Salt Lake City Corporation from 1977 to April 15, 1981 as a Real Estate Acquisition Officer. In January 1981 the employer reorganized the department in which the claimant worked by combining it with another department and redefining jobs. As part of the process of redefining jobs, the employer established job descriptions for the positions of Fixed Asset Agent I and Fixed Asset Agent II. The claimant testified that the job description for Fixed Asset Agent II was identical to the job description she had as Real Estate Acquisition Officer. *The only*

■ However, the "equity and good conscience" standard does not give the Commission carte blanche authority to confer benefits at will. In determining what constitutes equity and good conscience, the Commission must consider "the reasonableness of the claimant's actions" and whether the claimant has "a genuine continuing attachment to the labor market." Thus, the "equity and good conscience" standard requires the Commission to assess the totality of the employment situation before bestowing benefits based on equity and good conscience.

The City contends that the Board of Review erred in finding that the position of Fixed Asset Agent II had been established by the City, and therefore Lynch was available to fill that position. The finding that the Fixed Asset Agent II position had been created by the City is a question of fact, which was resolved by the Board of Review and has substantial support in the evidence.[2] The Fixed Asset Agent II position had been placed on the organizational chart of the department. Although Lynch was found by the Board to be "qualified [and] fully experienced and trained, she was offered the position of Fixed Asset Agent I and told that she was not qualified for the Fixed Asset Agent II position."

The City also argues that the Board of Review impliedly and erroneously found

*differences between these two positions were reduced qualification requirements and higher rate of pay for the position of Fixed Asset Agent II.* Despite the reduced qualification requirements, the claimant, who had previously qualified for the Real Estate Acquisition Officer position, was advised by the employer that she did not qualify for the Fixed Asset Agent II position. In addition, the claimant's supervisor testified that the proposed changes would not significantly change the claimant's job and her responsibilities. Despite that testimony, the claimant testified that her real estate files had been taken from her and that she was not permitted to work on real estate assignments. The claimant's testimony in this regard was never seriously disputed or denied by the employer. [Emphasis added.]

that the City wrongfully refused Lynch the position of Fixed Asset Agent II.[3] In our view the evidence is ample to support the Commission's determination. Lynch had occupied the position from which the job description for the Fixed Asset Agent II position was derived. Even though the City lowered the qualifications for the new position, Lynch was told she did not qualify. The City's determination was based on a clearly unfair and inequitable evaluation. During the evaluation period, when she was being considered for the new position, her regular duties with respect to real estate were taken from her. Lynch's real estate files were removed and she was not even permitted to work on real estate assignments during the time she was being evaluated for the Fixed Asset Agent II position, or even to perform work comparable to the position for which she was being considered. Nevertheless, she was required to keep productivity sheets as part of her evaluation— an evaluation which, if not actually designed to produce a preordained result, at least had that effect. The unfairness of Lynch's treatment is highlighted by the Commission's finding that she was fully qualified, trained, and experienced for the job.

■ The City takes issue with the Board of Review's finding that Lynch's "real estate files had been taken from her and that she was not permitted to work on real estate assignments." Lynch testified that her supervisor took her real estate files from her during the evaluation period and left her with nothing more than clerical work. The City claims that subsequent testimony contradicts this conclusion. Be that as it may, substantial evidence need not be uncontradicted evidence. It is for the administrative agency, not this Court, to choose between conflicting facts. U.C.A., 1953, § 35–4–10(i). It is beyond our prerogative to determine that the Board of Review's reliance on Lynch's testimony was inappropriate.

■ As another ground for reversal, the City contends that Lynch quit her job when she did not receive the raise she demanded. The City cites Annot., 95 A.L.R.3d 449, 452:

> It has been said that an employee admits the suitability of wages and working conditions by accepting the employment, and that in order to justify quitting a job because of pay or working condition, the employee must show that the conditions change, or that he was deceived. [Footnote omitted.]

This authority, however, weighs against the City's position. There was a change of condition in the department where Lynch worked. The City's evaluation of her performance after taking away her files was not fair. Clearly, Lynch had a reasonable basis to conclude that she should have been awarded a position in the new organization comparable to her old job rather than being "demoted" to a different job with lower pay. Under the above authority, if Lynch had accepted the Fixed Asset Agent I position, she would have admitted the suitability of its wages and job description. The Board found, in effect, that Lynch left the City's employment not because she failed to receive a raise but because it appeared inevitable that she would be demoted to the Fixed Asset Agent I position.

■ We emphatically state that the unemployment compensation laws do not prevent an employer from demoting employees or cutting pay rates when there is good faith and cause for such an action. *United Steelworkers v. Department of Employment Security,* 16 Utah 2d 72, 395 P.2d 837 (1964). And certainly not every friction between an employer and employee will justify an award of unemployment compensation benefits to an employee who voluntarily quits. But the other side of that coin is that an employee may expect to be treated with a degree of fairness and honesty. This Court has held that "to interpret the law so as to compel a person confronted with pending unemployment to accept *im-*

---

**3.** It appears that the position at some later date    was eliminated.

*mediately* a position below his skill would be to create a situation where a person was coerced by economic pressure to abandon his hard-earned training and experience." *United States Steel Corp. v. Department of Employment Security,* Utah, 523 P.2d 854, 856 (1974).

■ Because of the City's subjecting Lynch to an unfair evaluation procedure in an apparent effort to force her to take a lower paying job which would not have fully utilized her hard earned experience and knowledge, the Commission was within its prerogatives in ruling that Lynch was entitled to compensation on the basis of "equity and good conscience." The Board of Review also found that Lynch's actions were reasonable under the circumstances and that she had a continuing attachment to the labor market as evidenced by her search for employment subsequent to her leaving the City.

■ The City also claims that the Board exceeded its jurisdiction because it based its decision on a new issue not considered at the initial hearing or before the appeals referee. The argument is based on administrative rules promulgated by the Industrial Commission requiring all issues decided on appeal to be considered initially by the appeals referee. The City, however, overlooks the fact that the issue before the referee concerning Lynch's eligibility for unemployment benefits after voluntarily leaving the City's employ was not restricted simply to the "good cause" issue, but encompassed all the statutory provisions dealing with voluntarily leaving work.

■ The City also contends that the actions of municipal officials are presumed valid and will not be overturned unless they are demonstrated to be arbitrary, capricious, or an abuse of discretion. We have no quarrel with the general proposition, but it does not apply here. The issue is not the lawfulness of the City's actions; it is simply a matter of whether the Industrial Commission properly awarded compensation.

Finally, the City asserts in effect that the Employment Security Act insofar as it binds municipalities violates Art. VI, § 28 of the Utah Constitution which provides:

The Legislature shall not delegate to any special commission, private corporation or association any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capital site, or to perform any municipal functions.

The contention is simply a bare bones assertion that authorizing the Industrial Commission to order a municipality to pay unemployment compensation is unconstitutional under § 28. Because there is a complete absence of any briefing on the issue, judicial forebearance to decide such a broad constitutional issue without proper briefing prompts us to forego deciding the issue.

Affirmed.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.