**Lena CHAPMAN, Plaintiff,**

v.

**The INDUSTRIAL COMMISSION of Utah, Department of Employment Security, Defendant.**

**No. 19930.**

Supreme Court of Utah.

May 7, 1985.

Lena Chapman, pro se.

K. Allan Zabel, Linda Wheat Gowaty, Salt Lake City, for defendant.

ZIMMERMAN, Justice:

This is a pro se appeal from a decision of the Board of Review of the Industrial Commission of Utah, affirming the administrative law judge's holding that claimant Lena Chapman voluntarily left work without good cause and thus disqualified herself from receiving unemployment compensation benefits under the Employment Security Act, U.C.A., 1953, §§ 35–4–1 to –26 (1974 & Supp.1983). While we agree that claimant did not have "good cause" for leaving her job, as required by the statute, we reverse because to deny claimant benefits would be contrary to equity and good conscience, a separate statutory ground for the award of benefits.

From August of 1978 until December 24, 1983, claimant was employed by K-Mart as a cafeteria cook. During that time, she was supervised by a woman whose behavior was often erratic and had worsened during the two years preceding claimant's quitting. The supervisor periodically treated her employees poorly, often playing them off against each other. In particular,

she swore at claimant, accused her of doing things she had not done, and subjected her to unreasonable fits of anger. Claimant never reported this conduct to a superior because, although the supervisor's behavior was extremely distressing to her personally, she felt sorry for her and did not want to jeopardize the supervisor's job. Finally, on Christmas Eve of 1983, claimant walked off the job. The precipitating event was claimant's request to the supervisor for help from one of the other employees who was not particularly busy at the time. For no apparent reason, the supervisor began screaming and swearing at claimant. A witness at the hearing, describing the Christmas Eve incident, stated that the supervisor acted as though she "was nuts, like she had just lost her mind." Unable to tolerate further abuse from the supervisor, claimant walked out.

Claimant later applied for unemployment compensation, but it was denied on the grounds that she had left work voluntarily without good cause. She sought review of that decision, and on February 17, 1984, the matter came before an administrative law judge. After hearing the testimony of claimant, a fellow cafeteria employee, and both the general and personnel managers of K-Mart, the administrative law judge affirmed the decision of the Department of Employment Security. He based his decision on *Denby v. Board of Review of Industrial Commission,* Utah, 567 P.2d 626 (1977), reasoning that where claimant had coped with her admittedly difficult employment conditions for five years and had never made her concerns known to anyone in a position to take corrective action on her behalf, she had not established "good cause" for quitting within the meaning of section 35–4–5(a) of the Code. The administrative law judge also concluded summarily that the same section's provision allow-

ing an award of benefits on the basis of equity and good conscience did not apply to this case.

Claimant appealed the administrative law judge's decision to the Board of Review. The Board of Review affirmed, and claimant now appeals that affirmance. Although we agree that claimant did not establish good cause for quitting, we reverse because we find that the statutory standard of equity and good conscience has been met.

■ In *Denby v. Board of Review,* relied upon by the administrative law judge, we stated that to establish good cause for voluntarily leaving employment, the employee "must indicate an effort to work out the problems, unless he can demonstrate that such effort would be futile." 567 P.2d at 630. No such showing was made in this case. Claimant tolerated the apparently outrageous behavior of her supervisor for five years and at no time complained to her supervisor's superiors or made any other attempt to solve the problem, and she presented no evidence that such an attempt would have been futile. In fact, the uncontradicted testimony of management was that a complaint would have brought relief. Therefore, the Commission found that good cause for quitting was not established, and we affirm that finding as being adequately supported by record evidence.[1]

■ Although claimant failed to establish good cause for leaving her employment, our inquiry cannot end here. For even if good cause is not shown, section 35–4–5(a) also permits payment of benefits if "[a] claimant leaves work under circumstances of such a nature that it would be contrary to equity and good conscience to impose a disqualification." U.C.A., 1953, § 35–4–5(a) (Supp.1983).[2]

---

1. The opinion of Justice Stewart appears to be based upon a generally applicable presumption that an effort to go over one's supervisor's head to work out problems is unnecessary because it will be futile. Such a presumption reflects a poor choice for a general policy, and applying that presumption to the case before us is unjustified. The employer's general manager testified

without contradiction that, had he been contacted by claimant, he would have been willing to intervene to resolve the problem that induced claimant to quit.

2. The fact that claimant did not specifically seek benefits under the equity and good conscience provision does not bar its consideration. We

We have held that the two standards incorporated in section 35-4-5(a), "good cause" and "equity and good conscience," are separate and distinct bases on which a party who voluntarily leaves work may be awarded compensation:

> On the plain meaning of the statute, it is clear that if no "good cause" is shown, the "equity and good conscience" standard is to be applied. Thus, even when an employee quits "voluntarily and without good cause," benefits may be awarded if the Commission finds that "it would be contrary to equity and good conscience to impose a disqualification."

*Salt Lake City Corp. v. Department of Employment Security,* Utah, 657 P.2d 1312, 1317 (1982); *see also St. Benedict's Hospital v. Department of Employment Security,* Utah, 656 P.2d 1029 (1983).

■ In this case, the administrative law judge, after meticulously explaining why claimant's actions failed to measure up to the good cause standard, simply announced that "[i]t is further determined that the provisions of equity and good conscience do not apply in this case." On review, the Commission made no additional findings to support its conclusion that the equity and good conscience standard had not been met. The statute itself mandates that the Commission, in deciding claims under the alternative standard of equity and good conscience, must consider both "the reasonableness of the claimant's actions" and the extent to which the claimant has "a genuine continuing attachment to the labor market." U.C.A., 1953, § 35-4-5(a) (Supp. 1983). Because the Commission merely stated an unsupported conclusion, we are at a loss to know whether or to what extent the Commission considered these factors. And the conclusory nature of the administrative law judge's determination is especially difficult to understand in light of the substantial record evidence that mandates an award based on equity and good conscience.

■ The findings of fact entered by the administrative law judge state that claimant's supervisor was very difficult to get along with; that she was subject to periodic outbursts of anger, during which time she would swear at and demean her employees; and that she often behaved irrationally. The record also indicates that claimant's failure to report her supervisor to management was motivated by a desire to protect her. Claimant knew that the supervisor was in poor health and did not want to cause her to be fired. While claimant's inaction should not be condoned, under the circumstances it was not unreasonable.

Further, several letters written by claimant, who is acting pro se in this matter, appear in the record. They indicate claimant's continuing desire to work and her frustration, at the age of 62, with her inability to find other employment. We have previously said that "[a]lthough the [Employment Security Act] is not designed to provide benefits to those who will not work, it is to be liberally construed and administered to assist those who are attached to the work force and need a bridge between jobs." *Salt Lake City Corp. v. Department of Employment Security,* 657 P.2d at 1315 (citations omitted). Claimant had worked at her job for five years and only left when the situation became intolerable. She has since been seeking other employment without success.

Under the circumstances of this case, where the facts argue overwhelmingly in favor of a compensation award to claimant, we hold that as a matter of law the equity and good conscience standard has been satisfied.

Reversed.

HALL, C.J., and HOWE, and DURHAM, JJ., concur.

STEWART, Justice (concurring in result):

I would reverse the Commission and remand this case with directions to the Com-

---

have previously held that once the question of good cause has been raised, all of the statutory provisions dealing with voluntarily leaving work may properly be considered. *Salt Lake City Corp. v. Department of Employment Security,* Utah, 657 P.2d 1312, 1319 (1982).

mission to award the plaintiff benefits forthwith. In my view, plaintiff clearly had good cause for quitting, and the Commission acted arbitrarily in ruling otherwise. The majority's position that the claimant did not have "good cause" for quitting under U.C.A., 1953, section 35–4–5(a) (Supp.1983) is, I submit, contrary to law, based on an improper reading of *Denby v. Board of Review*, Utah, 567 P.2d 626 (1977). Furthermore, the majority's resolution of this case under the "equity and good conscience" standard ignores the fact that the claimant did not rely on that standard before the Commission and therefore that standard is not appropriately before the Commission on this appeal.

The plaintiff, Lena Chapman, a 62-year old woman, was harassed, verbally abused, and otherwise harshly treated by her supervisor for a number of years. Chapman testified that at times her supervisor became very angry, swore at her, accused her of doing things she had not done, and even punished her for things she had not done by assigning her to work the night shift. At times the supervisor became so agitated that she had to take medication to calm herself. The plaintiff finally quit when the supervisor, in a fit of extreme rage, swore at her and acted "like a crazy woman" because plaintiff asked one of the waitresses to help her for a moment. A co-worker who was present at this incident testified on claimant's behalf that the supervisor acted "crazy, upset, made, ... like she had lost her mind."

The administrative law judge found that claimant's supervisor acted irrationally, was very difficult to get along with, was moody, and was periodically given to emotional outbursts of anger during which she would swear and demean her employees.

Section 35–4–5(a) disallows unemployment benefits if "the claimant [leaves] work voluntarily without good cause." In *Denby v. Board of Review*, Utah, 567 P.2d 626 (1977), we interpreted "good cause" to include situations where "external pressures [are] so compelling that a reasonably prudent person, exercising ordinary common sense and prudence, would be justified in quitting under similar circumstances." *Id.* at 630 (*quoting Stevenson v. Morgan*, 17 Or.App. 428, 522 P.2d 1204, 1206 (1974)). This case clearly satisfies that standard. When minimum standards of civility in the work place are cast aside by supervisors, workers are not required to bear unreasonable abuse that is heaped on them.

I recognize that frictions invariably arise between workers and their supervisors and not every disagreement can justify a worker's quitting. Surely workers must learn to tolerate some occasional abuses and injustices by supervisors or fellow workers. But a worker is not required to tolerate despotic, tyrannical, and wholly unreasonable conduct by a supervisor on a repeated basis. A worker is entitled to be treated civilly within the necessary restraints imposed by hierarchical control in the work place. More than that, the employer, not the employee, has the responsibility of assuring minimally decent conduct by the employer's supervisors.

Jurisdictions with "good cause" provisions similar to ours have sustained the granting of unemployment compensation in similar circumstances. For example, in *Associated Utility Services v. Board of Review*, 131 N.J.Super. 584, 331 A.2d 39 (1974), a clerk typist was harassed, mistreated, and inappropriately scolded by her supervisor, who also frequently called her at night to "give her hell." The court held that intentional harassment of an employee was an abnormal working condition and constituted good cause for leaving work voluntarily. *See also Willet v. Unemployment Compensation Board of Review*, 59 Pa.Commw. 500, 429 A.2d 1282 (1981). *See generally* Annot., *Unemployment Compensation: Harassment or Other Mistreatment by Employer or Supervisor as "Good Cause" Justifying Abandonment of Employment*, 76 A.L.R.3d 1089 (1977).

The majority relies upon *Denby v. Board of Review, supra,* for the proposition that the claimant in the instant case could not show good cause for quitting because she did not first try to work the problem out

with her supervisor. *Denby* does not control this case. The 64-year-old claimant in *Denby* voluntarily left his job as a postal worker. He cited as one reason for quitting the requirement that he work overtime. The evidence showed, however, that the employer allowed exemptions from that requirement and that the employee never requested an exemption. In that context, the Court stated that "an employee with grievances about his employment must indicate an effort to work out the problems, unless he can demonstrate that such effort would be futile." 567 P.2d at 630. Since *Denby* had not sought to work out the overtime problem with his superior, he could not demonstrate "good cause."

The language in *Denby* that an employee must "indicate an effort to work out the problems" certainly cannot mean that an employee who is subjected to extreme harassment and verbal abuse by a supervisor must take up his or her grievance with that supervisor. That would no doubt only make matters worse. For the employee to go over the supervisor's head to the next level would also likely be self-defeating and possibly jeopardize his employment. Furthermore, it is management that has the duty of monitoring and policing supervisors who engage in gross mistreatment of employees; it is hardly the responsibility of employees to restrain their supervisors. Even *Denby* made it explicit that there is no requirement that an employee must try to work out a problem with a supervisor if the effort would be "futile." That is this case.[1]

The claimant here, a woman of advanced years, endured her supervisor's mistreatment over a long period without complaining to the store manager. She did not complain because at times her supervisor would get better, and she didn't want to jeopardize the supervisor's job. Clearly it was management's responsibility to correct the misconduct of its supervisor. To deny the claimant unemployment compensation

under these circumstances is to penalize her for her patience and long-suffering. When management fails to correct a supervisor's abusive treatment of employees, the law should not penalize the employee who finally breaks down and takes the drastic action of quitting.

In my view, the claimant, on the Commission's own findings, had good cause for quitting and the Commission acted arbitrarily and capriciously in denying benefits.

---

1. There is evidence that a K-Mart official testified that he would have worked the problem out had plaintiff come to her. That sounds fine after the fact, but management had the duty to solve the problem long before claimant quit.