**Sharon Anne NICHOLS, Plaintiff,**

**v.**

**UTAH STATE DEPARTMENT OF EMPLOYMENT SECURITY; U.S. Department of Agriculture; USDA Forest Service; and their named/unnamed officials, individually or collectively, relating to this suit, Defendants.**

**No. 21012.**

Supreme Court of Utah.

March 26, 1987.

Sharon Anne Nichols, pro se.

David L. Wilkinson, Atty. Gen., Lorin R. Blauer, (Emp. Sec.) Salt Lake City, for defendants.

HOWE, Justice:

Plaintiff seeks review of a decision of the Board of Review of the Industrial Commission affirming the administrative law judge's findings that the claimant, Sharon Anne Nichols, voluntarily left work without good cause and that a denial of unemployment compensation to her under U.C.A., 1953, § 35–4–5(a) would not be against equity and good conscience.

Plaintiff began working for the U.S. Forest Service in December of 1978 as a personnel clerk. In 1981, after experiencing problems with her supervisor, she initiated grievance procedures on the ground that she believed that management had been acting in an arbitrary and discriminatory manner toward her. Although successful on some points, her appeals were generally decided in favor of the agency. Her supervisor subsequently retired, and she was transferred to another office; however, she continued efforts to "clear her name."

Inasmuch as her appeals had been largely unsuccessful, she began to build her own case against her employer. She saved records and documents as "souvenirs" of her Forest Service career and added to her collection any document which she felt may be of value to her in showing wrongdoing on the part of her supervisors. Most of these records were copies of personnel records of various employees, collected and retained without their permission. Her collection also included fingerprint records, personal correspondence, and government manuals and regulations. The collection grew to fill over twenty cardboard boxes by the time it was discovered by her employer.

During this same time, plaintiff was in counseling for personal stress and depression which she claimed was related to her unhappiness on the job and her frustration with her failure in the appeals process. She was advised by her professional counselor to seek other employment; despite this advice, she did not do so but continued instead to build her case against the Forest Service.

Her employer became aware of her collection when she presented some of these documents in support of a grievance she had filed in a discrimination action. Although the particular records submitted did not support her allegations in that action, the reviewer was concerned that plaintiff even had such documents in her possession. He subsequently reported the matter to the agency's internal investigator. After checking plaintiff's desk in the office and locating sufficient information on which he obtained a search warrant, the internal investigator searched plaintiff's home and discovered the bulk of the collection.

A preliminary inventory of the twenty-eight boxes found revealed several items of government property, as well as the private personnel records. Plaintiff was notified by letter on May 14, 1985, that she was being indefinitely suspended while the matter was considered by the U.S. Attorney's office. That letter stated the date when the suspension would become effective and outlined the appeal rights available to her as a merit employee.

After consulting with the U.S. Attorney's office, the employer concluded that while criminal charges were not warranted, plaintiff should be administratively removed from employment. A letter to that effect, once again containing an outline of the appeal rights available to her, was mailed to her on May 29, 1985.

After plaintiff had been suspended but before she had been terminated, she chose to quit her job without giving any advance notice. In her letter of resignation, she alluded to her suspension in the removal action that was pending against her. Therefore, her employer was concerned whether her resignation was voluntary and related to those pending actions or whether it was a resignation under duress to avoid those actions. A letter was mailed to her asking for clarification. Once again, the letter advised her of her appeal rights.

Although she acknowledged receipt of that letter, she elected not to respond to it.

Plaintiff later filed for unemployment compensation, but it was denied on the ground that she had left work voluntarily without good cause. An administrative law judge affirmed the decision of the Department of Employment Security, finding that plaintiff did not have good cause for leaving work. He concluded that plaintiff's actions "were not reasonable under the circumstances" and entered his finding that plaintiff "voluntarily left work without good cause under circumstances which do not render a denial of unemployment benefits contrary to equity and good conscience."

Our standard of review in cases such as this is well established. We look upon the evidence in the light most favorable to the findings of the Board of Review. If there is evidence which can reasonably be regarded as supporting the determination made, the Commission's order must be affirmed. *Taylor v. Department of Employment Security, Industrial Commission*, 647 P.2d 1 (Utah 1982); *Whitcome v. Department of Employment Security, Industrial Commission*, 564 P.2d 1116 (Utah 1977).

Section 35–4–5(a)[1] establishes two standards that must be considered when an employee voluntarily terminates employment. In order to be entitled to unemployment compensation under the statute, the Commission must find (1) that an employee had good cause for terminating employment, or (2) in the absence of good cause, that it would be against equity and good conscience to deny benefits. We have held that these two standards are separate and distinct bases upon which a party who voluntarily leaves work may be awarded compensation:

On the plain meaning of the statute, it is clear that if no "good cause" is shown, the "equity and good conscience" standard is to be applied. Thus, even when an employee quits "voluntarily and without good cause," benefits may be awarded if the Commission finds that "it would be contrary to equity and good conscience to impose a disqualification."

*Chapman v. Industrial Commission*, 700 P.2d 1099, 1102 (Utah 1985) (citing *Salt Lake City Corp. v. Department of Employment Security*, 657 P.2d 1312, 1317 (Utah 1982); *St. Benedict's Hospital v. Department of Employment Security, Petersen*, 656 P.2d 1029 (Utah 1983)).

Here, the administrative law judge thoroughly explained his reasons for finding that plaintiff did not have good cause for terminating her employment. He found that "neither the adverse rulings through the grievance procedures [n]or [plaintiff's] dissatisfaction and stress resulting from these rulings constituted good cause for leaving work within the meaning of the law." There is substantial evidence to support these findings, without taking into account plaintiff's obvious dissatisfaction with her job and the fact that she had been considering leaving work voluntarily before she was notified that she had been suspended.

In order to assert the alternative "equity and good conscience" standard under the statute, the Commission must consider both "the reasonableness of the claimant's actions" and the extent to which the claimant has "a genuine continuing attachment to the labor market." U.C.A., 1953, § 35–4–5(a) (Supp.1983); *Chapman*

---

1. U.C.A., 1953, § 35–4–5(a) provides:
   An individual is ineligible for benefits or for purposes of establishing a waiting period:
   (a) For the week in which the claimant left work voluntarily without good cause, if so found by the commission, and for each week thereafter until the claimant has performed services in bona fide covered employment and earned wages for those services equal to at least six times the claimant's weekly benefit amount. A claimant shall not be denied eligibility for a benefit if the claimant leaves work under circumstances of such a nature that it would be contrary to equity and good conscience to impose a disqualification.
   The commission shall, in cooperation with the employer, consider for the purposes of this act the reasonableness of the claimant's actions, and the extent to which the actions evidence a genuine continuing attachment to the labor market in reaching a determination of whether the ineligibility of a claimant is contrary to equity and good conscience.

*v. Industrial Commission,* 700 P.2d at 1102. The administrative law judge found that plaintiff's actions of going outside established procedures and guidelines, taking possession of records, documents, and other items to which she was not entitled, disregarding the advice of her counselor that she terminate her employment, and finally, continuing to pursue her vendetta against her employer were all unreasonable under the circumstances. These findings adopted by the Board of Review are adequately supported by the record.

Affirmed.

HALL, C.J., STEWART, Associate Chief Justice, and DURHAM and ZIMMERMAN, JJ., concur.