**Allen PRITCHER, Petitioner,**

v.

**DEPARTMENT OF EMPLOYMENT SE-CURITY, SEG Stores, Inc., and Personnel Pool, Inc., Respondents.**

**No. 870361–CA.**

Court of Appeals of Utah.

April 14, 1988.

Stephen W. Julien, Utah Legal Services, Cedar City, for petitioner.

K. Allen Zabel, Alan Hennebold, Dept. of Employment Sec., Salt Lake City, for respondents.

Before BENCH, GARFF and ORME, JJ.

## OPINION

ORME, Judge:

Petitioner seeks review of the Board of Review's decision upholding the denial of his claim for unemployment benefits. We affirm in part, reverse in part, and remand the case to the Board.

Petitioner, who had numerous problems following his transfer to a new office in May of 1985, announced in August of 1986 that he would retire early from his position with his then-employer, SEG Stores, Inc. ("Safeway"). He stayed on, however, until September 30. Upon his retirement, he immediately became employed by Personnel Pool, Inc. While employed by Personnel Pool, which had an arrangement with Safeway to provide temporary help, he continued to do the same work for the same pay in the same location as he had done while most recently employed by Safeway. The problems he had encountered persisted and he quit Personnel Pool on December 1, 1986.

Petitioner contends he left the employ first of Safeway and then of Personnel Pool with good cause as contemplated in Utah Code Ann. § 35-4-5(a) (1987), namely as a result of serious health problems brought on by the stress which resulted from the many problems he had with his supervisors and co-workers and his unsatisfactory assignments. He argues, alternatively, that even if his health problems did not constitute good cause, the same factors which caused his poor health constituted good cause for his resignations. He also argues that even if it cannot be concluded he terminated his positions with good cause, he nevertheless is entitled to unemployment benefits as a matter of "equity and good conscience" under Utah Code Ann. § 35-4-5(a) (1987).

██ It must be conceded that petitioner's own and largely unrebutted testimony would support findings and a decision consistent with his position. Had he prevailed at the administrative level and his former employers sought our review, there would be a sufficient evidentiary basis upon which to affirm a decision favorable to petitioner. However, the issue before us is whether the appeal referee's findings unfavorable to petitioner and adopted by the Board are supported by "evidence of any substance," and, if they are, whether the referee's decision is "within the realm of reasonableness and rationality." *E.g., Stegen v. Department of Employment Sec.,* 751 P.2d 1160, 1162 (Utah Ct.App. 1988); *Jim Whetton Buick v. Department of Employment Sec.,* 752 P.2d 358, 360 (Utah Ct.App.1988).

It is clear that the referee found petitioner's stated reasons for leaving to be unbelievable. As petitioner himself testified, he stayed on at Safeway long after concluding his work environment was incurably miserable and some weeks after deciding to retire early. Not only that, immediately after managing to extricate himself from his unpleasant situation on the basis of early retirement, he voluntarily returned to the exact same situation, albeit for an ostensibly different employer, and submitted himself to the same problems for another two months.

This objective behavior of petitioner is a sufficient basis upon which the referee could conclude that petitioner had not demonstrated good cause for leaving his employment. Simply put, the referee was entitled to conclude that petitioner's work conditions and resulting health problems were not nearly so severe as petitioner alleged.[1] Had the conditions been so awful, he would have quit months before his retirement and would surely never have returned of his own accord.

The more difficult issue is whether petitioner should nonetheless have received benefits as a matter of equity and good conscience. There is no question petitioner endured verbal abuse about his age and

---

1. In addition, petitioner submitted a letter from his doctor which, as the referee noted in his decision, tended to suggest that petitioner's "acute anxiety state with functional colitic symptoms" had responded favorably to medication.

abilities, a lack of appreciation for his talents and experience, insufficient privacy, a host of similar problems, and resulting stress. Exacerbating his feelings towards his work was the sudden death of a dear colleague who had been suffering the same kind of stress. Petitioner's testimony was that he was motivated to stay on—and return—not because he was a glutton for punishment, but because he was a loyal employee and a supervisor he liked asked him to help out a while longer. Petitioner testified he stayed until he literally could not stand it any longer. These circumstances suggest the propriety of carefully considering the equities of petitioner's situation. On the other hand, Safeway's representative testified that petitioner's actions were really motivated by desires to maximize his retirement benefits and move to southern Utah.

Of course, the "equity and good conscience" provision is not an occasion for a free-wheeling judicial foray into the record and imposition of a decision consistent with this panel's collective sense of equity and fairness. On the contrary, that determination is one for the Department and ultimately the Board of Review, *see* Utah Code Ann. § 35-4-5(a) (1987), with this court's role limited, as explained above, to deciding whether the findings support a decision that "equity and good conscience" do not require compensation and whether "evidence of any substance" supports the findings. We are obliged to give considerable deference to the Board's determination of whether equity requires compensation. Moreover, the concept is not as wide-open as it might seem, but rather has been defined and refined by statute, *id.;* by rule, Utah Administrative Code R475-5a-3 (1988); and by case law, *e.g., Chapman v. Industrial Comm'n,* 700 P.2d 1099, 1101-02 (Utah 1985); *Salt Lake City Corp. v. Department of Employment Sec.,* 657 P.2d 1312, 1317 (Utah 1982).

The problem we face in the instant case is that we are unable to ascertain from the findings what consideration and weight the various "equity and good conscience" criteria received. Much like in *Chapman,* the referee in this case, "after meticulously explaining why petitioner's actions failed to measure up to the good cause standard," 700 P.2d at 1102, simply concluded summarily that petitioner's "actions were not sufficiently reasonable as to conclude a denial of unemployment insurance benefits would be contrary to equity and good conscience."[2] Unlike as in *Chapman,* however, we are unable to conclude "as a matter of law" that petitioner is entitled to benefits in equity and good conscience, *id.,* nor can we conclude as a matter of law that petitioner is *not* entitled to benefits on that basis.

Accordingly, while we affirm the Board's decision that petitioner did not meet the "good cause" standard of § 35-4-5(a), we must remand for reconsideration of the "separate and distinct"[3] question of whether the circumstances of petitioner's leaving work are "of such a nature that it would be contrary to equity and good conscience to impose a disqualification,"[4] and for the entry of suitable findings in support of whichever decision is reached.

GARFF and BENCH, JJ., concur.

---

2. "Reasonableness" is only one of two statutory factors relevant in considering "equity and good conscience," *see Chapman v. Industrial Comm'n,* 700 P.2d 1099, 1102 (Utah 1985), and one of four factors to be considered according to the Department's own rule. *See* Utah Administrative Code R475-5a-3 (1988). The *Chapman* case will also merit careful study on remand.

3. *Chapman v. Industrial Comm'n,* 700 P.2d at 1102.

4. Utah Code Ann. § 35-4-5(a) (1987).