Stuart M. ADAMS, Plaintiff,

v.

BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, and Facet Automotive Filter Company, Defendants.

No. 880518–CA.

Court of Appeals of Utah.

June 19, 1989.

David Paul White, Salt Lake City, for plaintiff.

R. Paul Van Dam, K. Allan Zabel, Alan L. Hennebold, Salt Lake City, for defendants.

Before BENCH, GREENWOOD and JACKSON, JJ.

BENCH, Judge:

Plaintiff Stuart M. Adams appeals a decision by the Board of Review of the Industrial Commission (Board) denying him unemployment benefits. Plaintiff argues that the Board erroneously determined that he had voluntarily quit work without good cause. He also argues that the denial of benefits was contrary to equity and good conscience. We affirm.

Plaintiff was employed as a maintenance mechanic by defendant Facet Automotive Filter Company (Facet) in Salt Lake City for a period of eight and one-half years. On February 19, 1988, plaintiff separated from that employment. The "event" that appears to have directly caused the termination of the employment relationship was plaintiff's assignment to night shift. Facet apparently made this assignment after another employee was injured on the job and could not fully perform his duties. Plaintiff was told that the assignment was temporary and would last no longer than a couple of weeks. Plaintiff nevertheless declined to work nights and Facet refused to permit him to work days, so plaintiff resigned.

Plaintiff's initial claim for unemployment benefits was denied. He then sought review before an appeals referee. The referee rendered a written decision containing findings of fact and conclusions of law. The referee determined that plaintiff's "situation was not so compelling as to leave him no alternative but to quit," and concluded that plaintiff "voluntarily left work without good cause." The referee further concluded that there were no mitigating circumstances sufficient to allow benefits under an "equity and good conscience" standard. Plaintiff was disqualified from receiving unemployment benefits until he became eligible under the terms of Utah Code Ann. § 35–4–4(g) (1988).

Plaintiff appealed the referee's adverse decision to the Board. The Board adopted the referee's findings of fact and conclusions of law, and upheld the referee's decision, finding that it was supported by competent evidence and a correct application of the law.

Plaintiff now appeals the Board's findings. He claims that he did not voluntarily quit, but was constructively discharged. Alternatively, he argues that even if the Board correctly determined that he had quit, he had good cause for doing so. In any event, plaintiff contends that he is entitled to unemployment benefits on an equitable basis.

We begin our analysis by noting that these proceedings were commenced after the effective date of the Utah Administrative Procedures Act ("UAPA"), Utah Code Ann. §§ 63–46b–1 to 63–46b–22 (Supp. 1988). Accordingly, our review of the Board's decision is governed by the standards set forth in Utah Code Ann. § 63–46b–16(4) (Supp.1988).

## I.

We first address plaintiff's claim that he was constructively discharged from employment. Utah Code Ann. § 35–4–5(a) (1988) provides that a person is ineligible for unemployment benefits if he or she "left work voluntarily without good cause."

The term "voluntarily" has been interpreted to mean "at the volition of the employee, in contrast to a firing or other termination at the behest of the employer." *Lanier v. Industrial Comm'n*, 694 P.2d 625, 628 (Utah 1985) (quoting *Chandler v. Department of Employment Sec.*, 678 P.2d 315, 320 (Utah 1984)). Whether an employee has left work voluntarily is a question of fact. *Lanier*, 694 P.2d at 628. Under the new UAPA, factual determinations must be "supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63–46b–16(4)(g). "[T]he 'whole record test' necessarily requires that a party challenging the Board's findings of fact must *marshall* all of the evidence supporting the findings and show that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence." *Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 68 (Utah App.1989).

Plaintiff challenges the Board's findings but does not marshal the evidence in support of those findings. Plaintiff merely states that his previous night shift work was an eleven-month "ordeal," which, in conjunction with his wife's day work for Facet, seriously hurt "a marriage built on unity." Plaintiff argues that since he was given a choice of working the night shift "or else," he had no choice at all and was thus constructively discharged.

Notwithstanding plaintiff's failure to marshal the evidence, it is clear that there is substantial evidence in support of the Board's factual findings. Plaintiff, not Facet, made the decision to sever the employment relationship. Plaintiff testified:

> I called in and said … that I was going to quit, and I said that I would work two weeks, but it would be on days, but I … do [sic] not think the company would accept that…. They wanted me to go nights startin' that night or that was it….

Plaintiff asserts that his choice between working nights and quitting work was "illusory" because he could not work nights. He cites *Green v. Board of Review*, 728 P.2d 996 (Utah 1986), where the employee's "choice" to quit work was compelled by the employer and constituted a discharge. In this case, however, plaintiff was merely told to work nights for a two-week period. It was his decision to convert this routine assignment into a choice between temporarily working at night and quitting; Facet indicated it was willing to continue the employment relationship and assigned plaintiff to night shift only to maintain production.

■ Plaintiff's claim that he was involuntarily terminated because Facet refused to allow him to work a two-week notice period is without merit. Although separation from employment is involuntary when the employer refuses to honor a notice period following resignation, *West Jordan v. Morrison*, 656 P.2d 445, 447 (Utah 1982), plaintiff in this case was willing to work a notice period only on his terms, i.e., during the day. Facet's rejection of plaintiff's offer under those terms cannot be construed as an involuntary termination. *See, e.g., Safeco Ins. Cos. v. Meyering*, 102 Wash.2d 385, 687 P.2d 195 (1984) (employee who gave notice to quit and was paid during the notice period, but not required to work during that period, was a "voluntary quit"); *Frost v. Department of Employment Sec.*, 135 Vt. 39, 370 A.2d 203 (1977) (employee who was told to leave work after conditioning his notice to quit on a matching wage offer, was a "voluntary quit").

In view of these facts, we conclude that there was substantial evidence to support the Board's finding that plaintiff left work of his own volition.

## II.

■ We turn next to plaintiff's argument that the Board erred in failing to find good cause for plaintiff's separation from employment. The "good cause" requirement found in section 35–4–5(a) has been defined by our supreme court to mean unemployment "caused by external pressures so compelling that a reasonably prudent person, exercising ordinary common sense and prudence, would be justified in quitting under similar circumstances." *Larry*

*Munger Enters., Inc. v. Industrial Comm'n,* 716 P.2d 808, 809–10 (Utah 1986) (quoting *Denby v. Board of Review,* 567 P.2d 626, 630 (Utah 1977)); *accord Covington v. Board of Review,* 737 P.2d 207, 210 (Utah 1987). Whether "good cause" exists is a mixed question of law and fact. *Denby,* 567 P.2d at 630. Our review of such questions under the UAPA is governed by subsection (4)(b) of section 63–46b–16, which provides for appellate relief in the event an agency erroneously interprets or applies the law. "[W]e will not disturb the Board's application of its factual findings to the law unless its determination exceeds the bounds of reasonableness and rationality." *Pro–Benefit Staffing, Inc. v. Board of Review,* 775 P.2d 439, 442 (Utah App. 1989); *see also Hurley v. Board of Review,* 767 P.2d 524 (Utah 1988).

■ Plaintiff had worked for Facet for over eight years and had been in his assigned work area for at least several months. One of the factors that allegedly motivated plaintiff to leave work was the existence of unsafe working conditions at night. As evidence of this claim, plaintiff pointed to the accident which injured the employee he replaced on night shift. However, the referee not only found that plaintiff failed to establish that safety precautions were lacking, he also found that plaintiff was willing to work days despite the existence of those same working conditions during the day. In addition, the referee found that Facet was attempting to improve those working conditions after the other maintenance mechanic was injured on the job. The referee thus concluded that plaintiff left work because he was dissatisfied. Dissatisfaction with conditions at work does not constitute "good cause" to quit under section 35–4–5(a). *See Midvag v. Department of Employment Sec.,* 735 P.2d 386 (Utah App.1987).

Another factor that allegedly motivated plaintiff to quit was his "unfair" assignment to night shift. He claims he was treated differently than other employees, using as examples a disciplinary action taken against him seventeen months earlier and the fact that he routinely had not been paid for working through lunch. He also stated that he had only recently switched to day work and that other employees could have been assigned the night shift in his stead. Testimony revealed, however, that it had been almost a year since plaintiff last worked nights. Plaintiff further claimed that acceptance of the temporary night shift assignment would instigate domestic problems, yet failed to further explain his claim of marital discord. The referee reasonably determined that these external pressures were "not so compelling as to leave him no alternative but to quit." The referee apparently concluded, and we agree, that the essence of plaintiff's objection was that he simply did not want to work nights. Based on the evidence presented, the referee's determination was well within the bounds of reasonableness and rationality.

## III.

Plaintiff's last contention is that even if the Board was correct in its finding that he voluntarily quit without good cause, a denial of unemployment benefits would be inequitable.

Section 35–4–5(a) provides that ineligibility for unemployment benefits should not be contrary to "equity and good conscience." The statute requires that the determination of unemployment claims be considered in light of the "reasonableness of the claimant's actions" and "the extent to which the actions evidence a genuine continuing attachment to the labor market." Utah Code Ann. § 35–4–5(a) (1988); *see also Chapman v. Industrial Comm'n,* 700 P.2d 1099, 1102 (Utah 1985).

■ In *Salt Lake City Corp. v. Department of Employment Sec.,* 657 P.2d 1312 (Utah 1982), the Utah Supreme Court, in applying the "equity and good conscience" standard, held that the Industrial Commission must assess "the totality of the employment situation" before awarding benefits under this standard. *Id.* at 1317. Any review of a decision made under equity and good conscience, however, must reflect the broad discretion conferred by the legislature upon the Industrial Commission. *Id.* at 1316. The court stated:

Although there may be little expertise involved in deciding unemployment compensation claims, we nevertheless recog-

nize that the Commission should be accorded considerable latitude in making determinations under that standard. In working with many such claims, the Commission no doubt has developed a "feel" for such cases that escapes a court that deals with them only occasionally. Accordingly, *we will not reverse unless the Commission has plainly abused its discretion.*

*Id.* (emphasis added); *accord Pritcher v. Department of Employment Sec.,* 752 P.2d 917, 919 (Utah App.1988) (the Board's determination of whether equity requires compensation is entitled to considerable deference).

Although *Salt Lake City Corp. v. Department of Employment Sec.* was decided prior to the passage of the new UAPA, section 63–46b–16(4)(h)(i) of the UAPA still provides relief to persons prejudiced by an agency action constituting "an abuse of the discretion delegated to the agency by statute." Accordingly, we conclude that our standard of review in this situation remains unchanged by the passage of the UAPA.

■ In applying that standard to the agency action at hand, we conclude that the denial of plaintiff's claim for benefits did not constitute an abuse of discretion. The referee apparently assessed the totality of the circumstances and determined that plaintiff had worked under the same conditions for years without looking for another job. Furthermore, the referee found that plaintiff failed to substantiate any mitigating circumstances that made plaintiff's "decision to quit logical, sensible or practical." The referee thus could have reasonably concluded that plaintiff neither acted reasonably nor demonstrated a continued attachment to the labor market.

Accordingly, we affirm the decision of the Board to deny plaintiff unemployment benefits until he is statutorily eligible.

GREENWOOD and JACKSON, JJ., concur.