**UNITED STATES STEEL CORPORA-
TION, Plaintiff,**

v.

**DEPARTMENT OF EMPLOYMENT SE-
CURITY AND BOARD OF REVIEW OF
the INDUSTRIAL COMMISSION OF
UTAH et al., Defendants.**

No. 13401.

Supreme Court of Utah.

June 11, 1974.

Erie V. Boorman, of Parsons, Behle & Latimer, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., Salt Lake City, for Industrial Commission.

Edgar M. Denny, Salt Lake City, for Utah Dept. of Employment Sec.

Phil L. Hansen, Salt Lake City, for Evans, Liston and Durrant.

CALLISTER, Chief Justice:

Plaintiff initiated this proceeding to review the determination of the Board of Review of the Industrial Commission, affirming the decision of the appeals referee that claimants, Evans, Liston and Durrant, were entitled to unemployment compensation benefits.

Claimants were journeymen millwrights, a skill which is classified as a trade and craft position by plaintiff. They were employed in the coke plant at plaintiff's Geneva Works. In the autumn of 1972, there was a coal shortage which necessitated a curtailment of the coke oven operations and a consequent reduction in the number of millwrights needed. Under the contract between plaintiff and the union, the claimants had the option of taking a direct layoff from the millwright position or being assigned as a laborer. Each claimant exercised his option to take a layoff rather than accept an unskilled position in the labor pool.

The base rate of pay for a millwright is $4.826 per hour; the base rate for a laborer is $3.51 per hour. Under a plan negotiated between the union and the company, a worker who is placed on a lower rated job is paid a sum quarterly to compensate him for the reduction in earnings at the rate of 85% of his previous year's earnings, including incentive pay, converted to an hourly basis.

The position of millwright is not by progression through the company's labor pool. A person is either hired directly as a journeyman millwright or as an apprentice. The claimants elected the layoff since the proffered alternative work would not utilize their special skills, training and experience for an indefinite time. Claimants filed for unemployment compensation while they sought employment commensurate with their prior training, earnings and experience.

Plaintiff vigorously urges that claimants were ineligible for unemployment compensation benefits under Section 35–4–5(a), U.C.A.1953, since they left work voluntarily without good cause, and the determination of the appeals referee to the contrary was unsupported by the record and erroneous as a matter of law.[1] In essence, plaintiff contends that as a matter of law claimants left their work voluntarily without good cause, when they rejected the offer of continuing employment as laborers with earnings substantially equivalent to their prior pay, with full fringe benefits. Claimants, according to plaintiff were qualified to perform the proffered work with no greater risk to their health, safety, morals or physical well-being than was involved in their prior position as millwrights.

The Board of Review found that the appeals referee's decision was fair, unbiased and supported by competent evidence. The Board stated that the referee applied the proper test of eligibility of a claimant under Section 35–4–5(a), U.C.A.1953, namely, whether, under all of the attendant circumstances, did the claimant have good cause for leaving his work temporarily and seeking to apply his attained skills in the open labor market rather than accepting assignment to the unskilled labor pool. The Board of Review emphasized that a millwright's skill is not attained by progression through labor experience but rather by vir-

tue of specialized training, the individual is employed as a skilled craftsman. The Board of Review concluded that claimants had sufficient cause, as shown by the evidence, to seek temporary work elsewhere in the skilled occupation for which they were fitted by training and experience rather than accepting work in the general labor pool outside of their field of experience.

The appeals referee in his decision, made a scholarly analysis of the law, which merits summation in this opinion. He stated that the employer's approach was that if a claimant were capable of performing the work, he would be obliged immediately to take the lower position, which would be deemed suitable so long as the general criteria, such as, pay, safety, etc. as provided in Section 35–4–5(c)(1), U.C.A.1953, were met. In contrast, the claimant's approach might be characterized as the use of the highest skill, which is premised on the concept that a claimant should not be expected immediately to accept employment using less than his highest skill. The immediacy of the acceptance would vary according to the training and experience attached to the skill, its marketability, and the length of the claimant's unemployment. For example a claimant, with a very technical skill, which he had acquired by suitable schooling and working experience and for which there was a market, would be allowed to refuse work not utilizing his highest skill for a much longer period than a person who had acquired a simple skill within a short time on the job. Nevertheless, even a person with the highest skill would be expected to lower his standard of expectation for work, such as pay, working conditions, etc. as the period of his unemployment extended; the rate of reduction would be dependent upon the nature of the skill.

The appeals referee explained that the latter approach comported with the overall suitability standards set forth in Section

1. Sec. 35–4–10(i), U.C.A.1953, provides: " . . . In any judicial proceeding under this section the findings of the commission and the board of review as to facts if sup- ported by evidence shall be conclusive and the jurisdiction of said court shall be confined to questions of law. . . . "

35–4–5(c)(1). The employer's approach emphasizes physical fitness and ability and minimizes the prior training and experience provisions of the law. In a recent amendment to the Act, Section 35–4–5(g), the legislature has expressed the contemporary view of society to encourage an individual to take training to acquire a skill. To hold that skill as a factor should be immediately excluded would be inconsistent both with recently expressed legislative intent and the specific standards of "prior training" and "experience" set forth in Section 35–4–5(c)(1) to determine the suitability of work.

The appeals referee stated that the basic intent of Unemployment Compensation Act was to alleviate the undue economic hardship experienced by those who were unemployed through no fault of their own. To interpret the law so as to compel a person confronted with pending unemployment to accept *immediately* a position below his skill would be to create a situation where a person was coerced by economic pressure to abandon his hard-earned training and experience. An interpretation consistent with the intent of the law would be to give a person an opportunity for a reasonable period of time to seek employment utilizing his highest skill so that he might provide better economic care for his family and be an attribute to his community.

The instant case is readily distinguishable from United Steelworkers v. Department of Employment Security [2] and Bus v. Bethlehem Steel Corporation [3] upon which plaintiff relies, since neither case involved whether the proffered employment was suitable by reason of the claimant's skill, training and experience but merely involved the issue of whether it constituted good cause to refuse employment at substantially reduced wages.

In the instant case, the work offered by plaintiff was to begin immediately at the termination of claimants' services as millwrights, a skilled job. At the time claimants were compelled to exercise their option, they had been granted no opportunity to search the labor market for employment which would utilize their skill, training and experience. Under such circumstances, work as unskilled laborers was unsuitable, and claimants did not voluntarily leave their employment without good cause.[4] The Board of Review did not err in upholding the determination that claimants were eligible for unemployment compensation. Defendants are awarded their costs.

TUCKETT, J., concurs.

CROCKETT, Justice (concurring specially):

I concur with the main decision, but in supplement thereto desire to set forth my ideas as to certain principles relating to the issue confronted here: eligibility for compensation for involuntary unemployment, because it is a problem constantly recurring in rulings that are being made every day. While each controversy must be analyzed and resolved by applying the rules of law to its individual facts, the proper solution is not to be found in considering solely the immediate interests of either the employee or the employer. It requires a consideration of their long-term interests vis-a-vis each other, and of the public interest in the general economy.[1]

---

2. 16 Utah 2d 72, 395 P.2d 837 (1964).

3. 37 A.D.2d 98, 322 N.Y.S.2d 310 (1971).

4. See Dubkowski v. Administrator, Unemployment Compensation Act, 150 Conn. 278, 188 A. 2d 658, 660–661, 97 A.L.R.2d 1120 (1963); In Re Troutman, 264 N.C. 289, 141 S.E.2d 613 (1965); Bayly Manufacturing Co. v. Dept. of Employment, 155 Colo. 433, 395 P. 2d 216 (1964); Boeing Company v. State Employment Security Board of Review, 209 Kan. 430, 496 P.2d 1376 (1972); 97 A.L.R. 2d 1125, Anno: Refusal of type of work other than that in which employee was formerly engaged as affecting right to unemployment compensation, Sec. 3, p. 1127.

1. See Sec. 35–4–2 et seq., U.C.A.1953: The purpose of the Act is to provide income for the worker and his family in times of unemployment and to provide stability for the general economy; see Olof Nelson Constr. Co. v. Ind. Comm., 121 Utah 525, 243 P.2d 951; Kennecott Copper Corp. v. Dept. of Emp. Security Etc., 13 Utah 2d 262, 372 P.2d 987.

As to the first: an employer must necessarily have a reasonable latitude of discretion in changing assignments of his employees in order to manage his business in the most efficient and economical manner. In the long run this will produce the best result for employers, by allowing businesses to prosper and expand; and consequently by furnishing more and better jobs for employees; and by these combining to benefit the general economy.

Nevertheless, also to be considered in connection with the foregoing is this equally important and sound proposition: that an employee who by reason of education, training and experience has attained a superior position in the type of work he does, and his earning capacity, should not be forced into a position where he will lose or seriously hazard their loss. It is also important to have in mind that the wage supplement (to assure 85% of their regular wage) is not the whole answer. It overlooks the fact that money is only one, although admittedly an important one, of the motivations in employment. It is a part of everyday experience and common knowledge that the senses of importance, of status and of achievement, are things which a worker is entitled to consider in choosing and following his vocation.

The honoring of the employees' rights in their positions has the effect of tending to encourage them to acquire superior skills and status and thus to make a more valuable contribution to production, which results in proportional enrichment to the general economy. If these values are lost, there is not only the tangible loss, but also the intangible loss in the diminution of incentive for employees to exert extra efforts to acquire higher skills and productive capacity. For these reasons it is consistent with the purpose of the Act to allow employees reasonable freedom of choice in order to protect and enhance these advantages.[2]

It should be recognized that when conflicts arise between the above stated interests of the employer and the employee, it is desirable and necessary that both be required to exercise a reasonable amount of forbearance and cooperation to serve the objectives of the Act. In accordance with that purpose it would not seem to be too great an imposition on an employee, nor unduly hazard the loss of his acquired skills and superior status, to require him to work at a somewhat lower class of job for a temporary period. But the rule of reasonableness should apply. As to status: the other position should not be too exaggerated a demotion; as to time: it should not be for too extended a period, the end of which should be either definite, or which can be predicted with reasonable certainty.

Because the Industrial Commission's Department of Employment Security is charged with the administration of the Act, it has both the prerogative and the responsibility of finding the facts;[3] and of analyzing the total situation, including the weighing of the interests referred to above, and of making the determination. Due to this endowment of authority, and its presumed expertise in this field, under the standard rule of administrative review we should not overturn its action unless it is so unreasonable as to be regarded as capricious and arbitrary.[4]

It is my opinion that the controlling factor in this situation was the length of time in which these workers could have expected to be restored to their regular positions. It is significant to point out that there was conflicting testimony as to what that period would be; and that upon such testimony, the finding made was that if they accepted the offered positions, the workers

2. For a good discussion and statement that the purpose of such Act is to encourage and improve, rather than to depress, the status of workers see the Dubkowski case, footnote 4, main opinion.

3. Findings are conclusive if supported by evidence, Sec. 35-4-10(i), U.C.A.1953.

4. Peterson v. Ind. Comm., 102 Utah 175, 129 P.2d 563.

"would lose the use of their skills *for an indefinite period of time* . . ." Notwithstanding the conflict, there is a reasonable basis in the evidence to support that determination.

For the reasons stated herein, I join in the main decision, refusing to overturn the findings and order of the Industrial Commission allowing unemployment compensation.

ELLETT, Justice (dissenting):

I am unable to agree with the majority opinion.

Some millwright employees of the plaintiff refused to perform work at substantially their regular pay because the operation of the coke plant at which they worked was temporarily curtailed because of a strike of their buddies at the coal mine. Those employees did not have enough seniority to maintain their work as millwrights when the force at the coke plant was reduced. However, they did have seniority sufficient to work as laborers.

Under the contract between the plaintiff and the union to which the employees belonged, each employee would have received pay for his work as a laborer in an amount within three dollars per week of his base pay as a millwright. The reduction in force was only temporary, and as soon as the union ended its strike at the coal mines the employees would have immediately been given work as millwrights.

United Steelworkers v. Department of Employment Security Industrial Commission,[1] an almost identical case with the instant matter was before this court in 1964. This court in refusing unemployment benefits there said at page 73 of the Utah Reports at page 837 of 395 P.2d:

A reduction in work at one of the employer's units, accompanied by a proffer to affected employees of employment in another unit at a reduced salary of between 15 and 20 per cent was met by their refusal and a resultant denial by the Commission to pay applicants unemployment benefits. A considerable number of fellow employees accepted the employment offered at a reduced salary.

The act providing benefits for unemployed people whose unemployment results from no fault of their own, was designed to alleviate hardship accruing to the employee and his family because of involuntary layoffs without any available substitute therefor.

I think the millwright employees should have accepted the available work, and I would reverse the decision of the defendant Department.

HENRIOD, J., concurs in the views expressed in the dissenting opinion of ELLETT, J.