**LARRY MUNGER ENTERPRISES, INC., Plaintiff,**

v.

**The INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, and Keith D. McConnell, Defendants.**

No. 20677.

Supreme Court of Utah.

April 2, 1986.

R. Kimball Mosier, Salt Lake City, for plaintiff.

K. Allan Zabel, Salt Lake City, for defendants.

## MEMORANDUM OF DECISION

ZIMMERMAN, Justice:

Larry Munger Enterprises, Inc., petitions from the grant of unemployment benefits to Keith D. McConnell, its former employee. The Board of Review determined that McConnell had good cause[1] to quit his employment as a truck driver with Munger Enterprises on September 11, 1984, and that McConnell was therefore entitled to draw unemployment benefits. We affirm.

McConnell quit after Munger Enterprises tendered to him a lengthy proposed employment contract containing what McConnell believed were unfair and possibly even illegal terms. The questionable terms regarded employee liability and bonding requirements, pay advances and cost reimbursement policies, and work quotas and standards. Upon receipt of the contract, McConnell telephoned petitioner's president, Larry Munger, to discuss these concerns, but the discussion was postponed by Mr. Munger because the call was long distance and discussion could proceed in person when McConnell returned home. When McConnell got back to Salt Lake City, Larry Munger was out of town, so McConnell discussed the proposed employment contract with Munger's brother, who told him to either sign the contract as written or find someplace else to work. After further discussion with Munger's brother, McConnell agreed to drive another trip and consider signing the contract. During this trip, McConnell decided the terms of the contract were not palatable. He quit, abandoning his rig in mid-trip.

Munger Enterprises contends that the Board of Review erred on two grounds in finding that McConnell had good cause to quit: first, there was no substantial evidence to show that McConnell's continued employment adversely affected him and, second, there was no substantial evidence that McConnell attempted to resolve his concerns with his employer prior to quitting.

■ The Board of Review's finding that continued employment under the terms of the proffered contract would adversely affect McConnell was adequately supported by the evidence. While the employer's attempt to specify the terms and conditions of McConnell's employment in writing is laudable, the Board of Review reasonably found that some of the terms and conditions were unreasonable, if not unlawful, under the circumstances of McConnell's employment. There was no suggestion that those unreasonable or potentially unlawful terms were subject to modification. Although Larry Munger testified before the administrative law judge that he had modified certain employee liability language in other drivers' contracts, that certain terms of the contract were not intended to be applied strictly as written, and that the form of the contract as given to McConnell had gone through some modification, McConnell was informed that the contract terms were not negotiable.

■ Munger Enterprise's second point is also without merit. An employee can es-

---

1. The applicable section of the Employment Security Act is U.C.A., 1953, § 35-4-5(a) (Repl.Vol. 4B, 1978, Supp.1985).

tablish good cause for quitting if the conditions which cause him or her to quit are "caused by external pressure so compelling that a reasonably prudent person, exercising ordinary common sense and prudence, would be justified in quitting under similar circumstances." *Denby v. Board of Review of Industrial Commission*, Utah, 567 P.2d 626, 630 (1977), *citing Stevenson v. Morgan*, Or., 522 P.2d 1204, 1206 (1974). McConnell was concerned that a number of terms of the proposed employment contract could have financial and legal consequences for him and his family over which he would have no control. The Board of Review found these concerns to be reasonable.

The law requires an employee to work out his concerns with an employer, unless such an effort would be futile. *Denby v. Board of Review of Industrial Commission*, 567 P.2d at 630; *Chapman v. Industrial Commission*, Utah, 700 P.2d 1099, 1101 (1985). There was sufficient evidence in the record for the Board of Review to find that the contract was presented in the context of a take-it-or-leave-it ultimatum, that further efforts at compromise would have been futile, and that McConnell's decision to quit work under these circumstances was reasonable.[2]

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

---

**2.** Our decision in no way countenances McConnell's abandonment of his rig. Such an action plainly would establish the employer's right to involuntarily terminate the employment relationship for "just cause" under section 5(b)(1) of the Employment Security Act. U.C.A., 1953, § 35–4–5(b)(1) (Repl.Vol. 4B, 1978, Supp.1985). But this case does not involve involuntary termination; it deals only with whether McConnell had good cause to quit. *Cf. Clearfield City v. Department of Employment Sec.*, Utah, 663 P.2d 440, 443 n. 2 (1983).